May.

Kerr, et al. vs. The State, use of The Levy Court, &c.

*In an action on the bond of a supervisor of public roads, wherein, there being no pleading, a case was stated for the court's opinion, upon which the county court gave judgment for the plaintiff. On appeal, reversed,[1] because the authority of the levy court was a special one, and had not been strictly pursued by them in making the appointment of a supervisor on the day directed by the act of assembly of 1801, ch 77.[2] Because there was no replication setting forth the breaches.*

APPEAL from Baltimore County Court. Debt on the following bond: "Know all men by these presents, that we, William Kerr, William Jones, Charles Griffin, Richard Ridgely, Esquire, and William Booth, all of Baltimore county, in the state of Maryland, are held and firmly bound unto the state of Maryland, in the sum of five thousand dollars current money of the United States, to be paid to the said state; to the which payment, well and truly to be made and done, we bind ourselves, our and every of our heirs, executors and administrators, in the whole and for the whole, jointly and severally, firmly by these presents,

Sealed with our seals, and dated this third day of October one thousand eight hundred and four. Now the condition of the above obligation is such, that if the above bound *William Kerr* shall perform all the duties required of him as supervisor of the turnpike roads in *Baltimore* county agreeably to the directions of an act of assembly, entitled, "An act to repeal an act, entitled, An act to lay out several turnpike roads in *Baltimore* county, and the several supplements thereto, and for other purposes," then the above obligation to be void, else to be and remain in full force and virtue in law," There were no pleadings in the case, and a judgment was confessed by the defendants, subject to the opinion of the court, whether under the acts of assembly under which the bond purports to be taken, or otherwise, the action could be sustained by the plaintiff. The following statement of facts was afterwards agreed to: The office of supervisor of the turnpike roads in *Baltimore* county, being vacant by the resignation of the supervisor previously appointed, *William Kerr*, (one of the defendants,) was appointed such supervisor, by the levy court of said county, on the 3d of October 1804, to fill said office, and duly qualified as such; and in consequence of said appointment *Kerr*, on the same day, entered into the bond on which this suit is instituted, with *William Jones*, &c. (the other defendants,) as his securities. To enable *Kerr* to perform the duties of such supervisor, he received the tolls collected on the said roads, which are appropriated by the act of 1801, *ch* 77, to the making and repairing said roads, and were to be so disbursed and expended agreeably to the provisions of the said act, under the authority and direction of the levy court; and for the like purpose he applied to and received from the levy court orders for money on the county collector of the tax, levied for making and repairing said roads, and agreeably thereto received the amount of them from said collector. Upon a settlement of his accounts and transactions, as supervisor aforesaid, for the second year of his being supervisor, on the 1st of October 1806, at which time he resigned his office, there remained of the monies received by him, unexpended and unaccounted for, the sum of $2773 05, for the recovery of which this suit was brought. *Kerr* settled an account as supervisor with the said court for the first year of his acting as supervisor, on the 1st of October 1805, and account-

ed for all monies which had been previously received by him as supervisor, by showing the rightful expenditure of the same. He was allowed by said court, in his first settlement, for his services for the first year as supervisor, the sum of $750, and refused to act any longer unless they could allow him a greater sum for the future, and the sum of $800 was allowed to him accordingly by said court, in his last settlement for his services as supervisor for the second year. The sum above mentioned which remained in the hands of *Kerr*, might have been laid out and expended by him as supervisor. At the time of the resignation of *Kerr*, there was due and unpaid to sundry persons the sum of $900, for provisions and other necessary articles furnished to him as supervisor, which sum the levy court paid to the persons to whom it was due after the resignation of *Kerr*. The sums which the levy court paid after *Kerr's* resignation, for articles furnished him as above stated, and also all such sums as he may have paid or settled as supervisor before or after his resignation, it was agreed should be accurately ascertained by *W. H. Winder* and *T. B. Dorsey*, &c. The question submitted to the court was, whether the sureties of *Kerr* were answerable on the said bond? The county court gave judgment for the plaintiff. From that judgment the defendants appealed to this court.

The cause was argued before Chase, Ch. J. and Buchanan, Earle, Johnson, and Martin, J.

*Martin* and *Winder*, for the Appellants. 1. The declaration is a joint one against all the obligors, as defendants, and the breach assigned therein is that they had not paid the penalty of the bond, when it ought to have been stated that neither the defendants, nor either of them, had paid. The bond is joint and several, and a payment may have been made differently from that which the breach in the declaration alleged. 2. The court below, under the agreement of the parties, could enter no judgment except for the sum which should be ascertained to be due by the persons appointed for that purpose. 3. The levy court had no authority to take the bond. The act of 1801, *ch.* 77, *s.* 2, directs "that the justices of the levy court of *Baltimore* county shall meet at the court-house of said county on the *second Monday in February next, after the passage of this act*, and shall proceed to appoint a fit and

proper person as supervisor of the turnpike roads in *Balti-more* county, who shall, before he acts as such, give bond," &c. "and the said supervisor shall, before he acts as such, take the following oath before some one of the justices of the levy court, to wit," &c. The act gives no authority to make any appointment of a supervisor, except on the second Monday in February next after the passage of the act. The statement does not show that the levy court did meet at the time and place mentioned in the law, and make the appointment of supervisor. Although there had been a previous appointment, (which is not stated to have been regularly made,) and the person appointed had re-signed, the law gives no authority to the levy court to meet at any other time, and make a new appointment. Where a special authority is delegated, it must be strictly pur-sued. Here the appointment of *Kerr* having been made on the 3d of October 1804, was not a legal appointment, and the bond by him given under that appointment is void, and the sureties therein are not answerable. They could be answerable only where the appointment was made in conformity to the law. That a special authority must be strictly pursued, they referred to *Flannagan's Lessee vs. Young*, 2 *Harr. & M'Hen.* 42, (argument of *J. T. Chase.*) 4. The statement does not show how the oath of the su-pervisor was taken, if it was taken at all. It was neces-sary to his sureties that he should take the oath prescribed by the law, as it was a great security to them that he would discharge his duties faithfully. 5. The repayment of mo-ney placed in the hands of the supervisor, was not one of the duties covered by the bond, and for which his sureties were liable. By the 14 section of the act of 1801, *ch.* 77, the supervisor appointed in virtue of that act, should, on or before the first Tuesday of October annually, settle his ac-counts on oath, with the levy court, &c. and when passed by that court the same shall be lodged in the clerk's office, &c. But there is nothing in said act about paying over any balance which may be due from him. No neglect is stated to have taken place in *Kerr*, and the repayment of money placed in his hands was no part of his duty. If money unexpended remained in his hands, when he re-signed he was bound to pay it over to some one; but he was guilty of no violation of his duty in not paying it over until he was called on and had refused to pay it over to

the new supervisor, if the law justified such appointment. But until there had been such appointment and neglect to pay to the new supervisor, no suit could be brought against him. There could be no breach until he was called upon by some one properly authorised to receive, and he had refused to pay. *African Company vs. Mason,* 10 *Mod.* 227. To show that the bond of the collector of a tax, which had not been laid at the time prescribed by law, was void, and the sureties therein were not liable, they referred to *Quynn vs. The State, use Pue et al.* 1 *Harr.* & *Johns.* 36.

No Counsel argued for the Appellee.

THE COURT reversed the judgment of the County Court on two grounds—1. There was a special authority delegated which had not been strictly pursued by the levy court in making the appointment of a supervisor on the day directed by the act of assembly. 2. There was no replication setting forth the breaches.

JUDGMENT REVERSED.